# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **GARY STEVEN VASILOFF,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:10-cv-8001-VEH-MHH** |
| | ) | **(Crim. No. 4:07-cr-337-VEH-PWG)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Movant Gary Steven Vasiloff seeks relief from a 3,900 month sentence that the Court imposed after Mr. Vasiloff pled guilty to 21 counts of sexual exploitation of a child (his then 14-year-old stepdaughter) and one count of possession of child pornography.  Pursuant to 28 U.S.C. § 2255, Mr. Vasiloff asks the Court to vacate, set aside, or correct his sentence.  (Doc. 1; Crim. Doc. 38).[1] Mr. Vasiloff contends that the sentence is unconstitutional and that his counsel was ineffective for a variety of reasons, including his attorney's purported failure to obtain adequate consideration for the appeal waiver in Mr. Vasiloff's plea

---

[1] Citations to the record concerning Mr. Vasiloff's §2255 motion appear throughout this Report and Recommendation as "(Doc. ___)."  Citations to the record in the criminal proceedings against Mr. Vasiloff appear as "(Crim. Doc. ___)."

agreement.   (*Id.*)  After reviewing the record concerning Mr. Vasiloff's § 2255

motion and the record from Mr. Vasiloff's criminal case, the undersigned

magistrate judge recommends that the District Court deny the § 2255 motion.

**OPERATIVE FACTS**

On August 8, 2007, the Government filed a complaint against Mr. Vasiloff

for possession of images of child pornography in violation of 18 U.S.C. §

2252A(a)(5)(B).  (Crim. Doc. 1).  Thereafter, the grand jury returned a twenty-

three count indictment against Mr. Vasiloff.  (Crim. Doc. 9).  Counts one through

twenty-one of the indictment charge that Mr. Vasiloff violated 18 U.S.C. §

2251(a) by inducing and using a minor to engage in sexually explicit conduct for

the purposes of producing a photograph of the conduct, using materials that had

traveled in interstate and foreign commerce.  Each of the twenty-one counts

corresponds to a separate photograph that Mr. Vasiloff took of his then 14-year-

old stepdaughter.  (Crim Doc. 9, pp. 1-13; Crim. Doc. 28, p. 10-11).  Count

twenty-two charges that Mr. Vasiloff violated 18 U.S.C. § 2252A(a)(5)(B)

because he possessed images of child pornography that were produced using

materials that had traveled in interstate and foreign commerce.  (Crim. Doc. 9, p.

13).[2]

On October 18, 2007, Mr. Vasiloff signed a plea agreement in which he agreed to plead guilty to twenty-one production counts and one possession of child pornography count.  (Crim. Doc. 15, p. 1).  In the agreement, Mr. Vasiloff stipulated that the following facts are accurate and provide the basis for his plea:

> The Alabama Department of Human Resources Assessment of Children at Risk officials received information and reported the same to the Cherokee County Sheriff's Office (CCSO) advising that Gary Steven Vasiloff had taken nude photographs of his stepdaughter (age 14) using a dildo and posing in other lewd and lascivious positions, and had downloaded the photos from his digital camera onto his personal computer.  It was also alleged that the victim had been given alcoholic beverages before the pictures were taken.
>
> On January 23, 2007, the CCSO executed a state search warrant at Vasiloff's residence.  Vasiloff's computer was seized, along with other items of evidence, including a digital camera and a dildo.  The CCSO utilized the computer analysis services of the Alabama Computer Forensic Lab to analyze Vasiloff's computer.  Vasiloff's computer was analyzed and twenty-one images of child pornography depicting the victim were discovered.  Seven additional images of the victim depicting breast nudity were also discovered.  In numerous of these pictures, the victim can be seen consuming alcoholic beverages she says were given to her by Vasiloff.  The images were produced by a Concord camera, which was manufactured in the People's Republic of China.
>
> The FBI initiated its investigation into the matter after receiving investigative reports from the CCSO on July 17, 2007.  On July 31, 2007, an

---

[2] Pursuant to 18 U.S.C. § 2253(a)(3), the Government demanded a forfeiture of property. (Crim. Doc. 9, pp. 13-14).

examiner with the Alabama Computer Forensic Lab provided the FBI with a report of examination of Vasiloff's personal computer.  The FBI reviewed the report on July 31, 2007, and confirmed the images of child pornography were in fact of the victim in question.

On August 8, 2007, Vasiloff was arrested on a federal complaint charging him with Possession of Child Pornography.  After waiving his rights pursuant to _Miranda_, he confessed to producing the images of child pornography depicting his stepdaughter.  He admitted that the images had been taken at a deceased relative's abandoned house in Cherokee County, Alabama, between the dates of June 23, 2006, and August 14, 2006.  He also turned over the Concord camera used to produce the images.

(Crim Doc. 15, pp. 3-4).

Under the terms of the plea agreement, the parties acknowledged that the maximum statutory punishment that a court could impose for production of child pornography was imprisonment for not more than 30 years.  (Crim. Doc. 15, p. 2). The maximum statutory punishment for possession of child pornography was imprisonment for not more than 10 years.  (_Id_. at 3).

The plea agreement contains a provision pursuant to which Mr. Vasiloff, with one narrow exception, waived his right to appeal or to attack collaterally via a § 2255 motion the sentence that the Court imposed following his plea.  The waiver provision states:

**I, GARY STEVEN VASILOFF, hereby waive my right to appeal my conviction in this case, any fines, restitution, and/or sentence (including one for revocation of release) that the court might impose upon me, and the right to challenge any sentence so imposed or the**

4

**manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:**

**The defendant reserves the right to contest in an appeal or post-conviction proceeding:**

**(a)      Any sentence imposed in excess of the applicable statutory maximum sentence(s).**

**The defendant acknowledges that before giving up these rights, he discussed the Federal Sentencing Guidelines and their application to his case with his attorney, who explained them to his satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.**

**I, GARY STEVEN VASILOFF, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

(Crim. Doc. 15, pp. 5-6) (emphasis in original)(signature on original).

After Mr. Vasiloff signed the plea agreement, the District Court held a change of plea hearing. (Crim. Doc. October 18, 2007 minute entry; Crim. Doc. 27). Before accepting Mr. Vasiloff's guilty plea, the District Court judge placed Mr. Vasiloff under oath and questioned him about his understanding of the plea and matters relevant to sentencing. (Crim. Doc. 27, pp. 3:22-4:7). The Court first asked Mr. Vasiloff whether he understood the Guilty Plea Advice of Rights Certification that he and his attorney signed. (*See* Crim. Doc. 14). Mr. Vasiloff

acknowledged that his attorney explained the form to him:

> THE COURT: Mr. Vasiloff, do you have in front of you a copy of a document entitled Guilty Plea Advice of Rights certification stamped filed October 18th, 2007?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT:  Did you and your attorney fill out that document?
>
> THE DEFENDANT:  Yes, ma'am.
>
> THE COURT: Did you understand the information in that document?
>
> THE DEFENDANT:  Mostly, yes, ma'am.
>
> THE COURT: What did you not understand? Is there anything you want to go over with me?
>
> THE DEFENDANT:  No, ma'am.
>
> THE COURT:  Can you tell me any parts of it that you do not understand?
>
> THE DEFENDANT: It was just the way some of the stuff was worded. Yes, he helped me through it.
>
> THE COURT:  Now that your lawyer has talked to you about what's in the document, after his explanation, do you understand the document?
>
> THE DEFENDANT:  Yes, ma'am.

(Crim. Doc. 27, pp. 4:20-5:15).[3]

---

[3]  The Advice of Rights Certification contains several pertinent provisions.  It states, for example: "The court must be satisfied that the defendant has not been coerced by any threat or

Mr. Vasiloff told the Court that before he signed the plea agreement, he had sufficient opportunity to review the agreement with his attorney, Mr. Tuten.  He stated that Mr. Tuten answered all of his questions.  (Crim. Doc. 27, p. 9:10-18).  The Court informed Mr. Vasiloff that the plea agreement contained a waiver provision, pursuant to which he was waiving his right to appeal certain issues.  (*Id*. at 9:19-10:3).  Mr. Vasiloff told the Court that he understood that he was giving up some or all of his rights to appeal.  (*Id*. at 10:4).

Before accepting the guilty plea, the District Court asked Mr. Vasiloff if he understood that the Court had the option of imposing a variety of sentences:

> In other words, do you understand, Mr. Vasiloff, that if I accept your plea of guilty, when I impose a sentence, I could structure a sentence that is totally consistent with the plea agreement or recommendations made by the U.S. Attorney's Office, or I could structure a sentence that could be viewed as substantially more severe or substantially less severe than the contemplated sentence, and yet you would have no right to withdraw the plea of guilty you were in the process of entering? Do you fully understand that?

(Crim. Doc. 27, p. 10:10-19).  Mr. Vasiloff told the Court that he understood.  (*Id*. at 10:20).  Thereafter, the Court explained the maximum penalties relating to Mr. Vasiloff's charges.  (*Id*. at 11:7-12:19).  In doing so, the Court explicitly stated

---

induced by any improper promise to enter the guilty plea, but that the plea is the free, uncoerced and voluntary choice of the defendant."  (Crim. Doc. 14, p. 2).  After that provision, there are two blanks for the defendant to select either "Done" or "Not Done."  (*Id*.)  Mr. Vasiloff initialed "Done."  (*Id*.)

that the available penalties for "Counts 1 through 21" applied to *each* count:

> Do you understand that the maximum penalties as to Counts 1 through 21:
> A fine of not more than $250,000. And this applies to each count, so there's
> 21 counts. So that's 21 times $250,000. Custody of not less than 15 years
> and not more than 30 years; again that is each count.

(Crim. Doc. 27, p. 11:15-19). The Court also noted that as to Count 22, "the

custodial term is not more than ten years." (Crim. Doc. 27, p. 12). Mr. Vasiloff

stated that he understood the maximum penalties. (*Id*. at 13). Additionally, Mr.

Vasiloff acknowledged that, "the Court must consider applicable sentencing

guidelines but may depart from those guidelines." (*Id*. at 13). His attorney, Mr.

Tuten, confirmed that he, "completely discussed with and advised Mr. Vasiloff

regarding the sentencing guidelines and the fact that they're merely advisory."

(*Id.* at 13).

Mr. Vasiloff recognized that he had a right to insist upon a plea of not

guilty. (Crim. Doc. 27, p. 13:19-21). The Court reviewed with Mr. Vasiloff all

the charges and definitions of the indictment. (*Id*. at 14:22-21:17). Mr. Vasiloff

told the Court that he understood the charges against him and that he had seen all

of the photographs at issue. (*Id*. at 14-16, 18). Additionally, the Court asked Mr.

Vasiloff if he was satisfied with his attorney. (*Id*. at 21:23-25). Mr. Vasiloff

responded, "[y]es, your honor." (*Id*.)

The Court gave the Government an opportunity to outline the evidence the Government would present if the case were to proceed to trial. (Crim. Doc. 27, p. 23:2-7). The Court directed Mr. Vasiloff to interrupt the Government if he believed that any of the Government's evidence was not true or could not be proved. (*Id.*) The Government outlined its case. (*Id.* at 23:16-25:5). Mr. Vasiloff told the Court that the facts the Government presented were substantially correct, including the Government's assertion that Mr. Vasiloff admitted that the images were taken "between the dates of June 23, 2006 and August 14, 2006." (*Id.* at 25:10). The Court informed Mr. Vasiloff that he was not required to plead guilty and that he was free to withdraw his guilty plea. (*Id.* at 26:4-7). Mr. Vasiloff still pled guilty. (*Id.* at 26:16). The Court found that Mr. Vasiloff's guilty plea was "freely, voluntarily, understandingly, and knowingly offered by him," and the Court accepted his guilty plea. (*Id.* at p. 29:11-17).

On January 16, 2008, the Court sentenced Mr. Vasiloff. (Crim. Doc. 28). Mr. Tuten, Mr. Vasiloff's counsel, acknowledged that he and Mr. Vasiloff had 35 days to review the presentence report. (*Id.* at 3:11-13). Mr. Vasiloff did not object to the report. (*Id.* at 3:14-17).

The Court noted that, "in his plea agreement, [Mr. Vasiloff] admitted certain facts that bear upon the computation of his offense level under the guidelines."

9

(Crim. Doc. 28, p. 3:23-25).  The Court then stated, "[t]here being no objections, the Court adopts the factual statements contained in the presentence report and makes specific findings that the guidelines offense level is 43, the criminal history category is 1, and the advisory guideline imprisonment term is life.  However, the defendant will be sentenced within the statutory limitations set forth in United States Sentencing Guidelines Section 5G1.2(d)."  (*Id.* at 4:15-22).  The Court stated that it determined the guideline sentence by stacking the statutory minimums for counts 1 through 21 and the statutory maximum for count 22.  (*Id.* at 15:14-17).  Mr. Vasiloff's attorney objected to the stacking of the statutory minimums on Counts 1 through 21.  (Crim. Doc. 28, p. 16:4-6).

Mr. Tuten asked the Court for a variance from the sentence.  (Crim. Doc. 28 at p. 5:9-11).  He argued, among other things, that Mr. Vasiloff was over 50 years old at the time of sentencing; that Mr. Vasiloff did not have an adult criminal history; and that Mr. Vasiloff deleted the images at issue from his computer before the federal investigation of his conduct began, indicating that he did not intend to "trade, sell, distribute, or keep" the images.  (Crim. Doc. 28, pp. 6-7).  Mr. Tuten also asked the Court to consider the Eleventh Circuit Court of Appeals's decision in *United States v. McBride*, a case in which the court of appeals affirmed a "lenient" sentence of a defendant "charged with possessing 981 images and 45

separate videos involving child pornography." (*Id.* at 8-9). Finally, Mr. Vasiloff offered a statement in which he explained that he deleted the images from his computer to prevent them from being "posted on the internet on sites." (*Id*. at 9).

In response to Mr. Tuten's request for a variance, the Government made a proffer of evidence to memorialize the results of the Government's investigation. The Government explained that it had evidence that demonstrated that Mr. Vasiloff initially tried to cover up his conduct. Specifically, after his stepdaughter was removed from his home, she reported to the person who was acting as her foster mother that Mr. Vasiloff, "had given her a dildo and taught her how to use it; had taken pictures of her; had given her alcoholic beverages. She also alleges that he gave her controlled substances when this was happening . . ." (Crim. Doc. 28, p. 11). DHR became involved, and state court hearings followed. According to the Government, at those hearings, Mr. Vasiloff reported that his stepdaughter, "was a habitual liar . . . He said that she had a mental illness. He said that she had had a physical illness wherein she had gotten a really high fever and it caused her to hallucinate and she had hallucinated these things. He said that she had been taking medication and even produced the medication in court at one point; said that one of the side effects of the medication was that it made her hallucinate and make up things and be a habitual liar." (Crim. Doc. 28, pp. 11-12).

The Government informed the Court that Mr. Vasiloff did not take responsibility for his conduct until after the FBI recovered the pictures from his computer and placed the photographs in front of Mr. Vasiloff. (Crim. Doc. 28, p. 12). The Government presented the pictures to the Court, and Mr. Tuten stated that Mr. Vasiloff did not deny taking the pictures. (Crim. Doc. 28, p. 13).[4]

The Court acknowledged that stacking the mandatory minimum sentences for 21 production counts and the maximum sentence for the possession count produced "an extraordinarily long sentence" of 3,900 months "which is 325 years, which is basically just another way of saying life," but the Court saw no reason to vary from that sentence. (Crim. Doc. 28, p. 16:7-10). Explaining her decision not to vary from the guideline range, the Court stated:

> The fact that Mr. Vasiloff used his position as the stepfather or surrogate father -- and by surrogate father, I mean more than stepfather. There was a close relationship where the child looked on Mr. Vasiloff as the person who had been in the role of her father makes this wors[e]. Although any child should not go through what this child went through, but the fact that Mr. Vasiloff was [for all intents and] purposes her father makes this worst. The fact that the mother was in the hospital just gave Mr. Vasiloff more access to his stepdaughter without any fear of discovery by his wife.

---

[4] With respect to Mr. Vasiloff's motion for variance, the Court noted that as opposed to variance, there was no motion for departure from the guidelines, meaning that "the only argument that the defendant is making is that the sentence – that the guidelines calculation is not reasonable under the facts and circumstances of this case." (Crim. Doc. 28, p. 15). Mr. Vasiloff's counsel agreed and acknowledged that he was objecting to the stacking of the statutory minimums. (Crim. Doc. 28, pp. 15-16).

. . .

But because of the relationship between Mr. Vasiloff and this particular child, it's not only, you know, the production of child pornography or sexual exploitation of a child, but it's sexual exploitation of a child who in everything but a biological sense was the daughter of the perpetrator, and so it's incestuous type. Well, although I guess technically incest. It's just that type of violation. And the level of -- I mean, I am not a psychologist or psychiatrist, but the level of the impact on the victim, in my experience with these cases coming before me, is exacerbated when there is an incestuous type exploitation.

. . .

So, now I do note that the photographs were taken within a relatively short period of time; two months, I think, sixty days . . . So I have considered the fact that it was over a short period of time, and that may lessen the damage to the stepdaughter. I hope. I hope so. I would assume that a shorter period of time would be easier to recover from [than] years of abuse and exploitation. But he didn't just take pictures of his stepdaughter, he got her to perform sex acts, and they weren't sex acts on him or with him; they were with a dildo. So I have considered that.  Therefore, I am not going to vary. And pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Gary Steven Vasiloff, is hereby committed to custody of the Bureau of Prisons to be in prison for a term of [180] months for Counts 1 through 21, each count, separately, and 120 months as to Count 22 separately with each count to be served consecutively to the other. The total sentence imposed is 3,900 months pursuant to the United States Sentencing Guidelines Section 5G1.2(b).

(Crim. Doc. 28, pp. 16-19).  The Court continued:

the Court finds that the sentence imposed is sufficient but not greater than necessary to comply with the statutory purposes of sentencing. Furthermore, the sentence is reasonable when considering the following sentencing factors found at 18 U.S.C. 3553(a), the nature and circumstances of the offense -- and I have talked about that in terms of, well, I may not

13

have specifically mentioned that the child was 14 at the time, but I considered that; her relationship with Mr. Vasiloff. I also considered the fact that Mr. Vasiloff doesn't have any real prior criminal history. I also considered the fact that the sexual exploitation involved causing the child to perform sex acts on herself, specifically, to penetrate herself with a dildo, in addition to the photographing of her. To reflect the seriousness of the offense; to promote respect for the law; and to provide just punishment for the offense; sexual exploitation of children -- the avoidance of that, the prohibition of that, and therefore the punishment of that to deter it by others -- certainly Mr. Vasiloff is not going to have an opportunity to do it again -- is about as important as [a] core value as I think this country has. And so the offense is extremely serious, and it's reflected in the sentence, and I think that the sentence does provide just punishment for the offense under all the facts and circumstances of this case.

(Crim. Doc. 28, pp. 19-20). Mr. Tuten re-newed Mr. Vasiloff's objection to the

sentence. (*Id*. at 23).

On January 25, 2008, Mr. Vasiloff filed a notice of appeal to the Eleventh

Circuit Court of Appeals, seeking relief from his sentence. (Crim. Doc. 22). The

Government moved to dismiss the appeal based on the appeal waiver in the plea

agreement. The Eleventh Circuit granted the Government's motion. (Crim. Doc.

34). On January 15, 2009, the Supreme Court of the United States denied Mr.

Vasiloff's petition for writ of certiorari. (Crim. Doc. 37).

On January 14, 2010, Mr. Vasiloff filed this 28 U.S.C. § 2255 motion. Mr.

Vasiloff contends that the Court should vacate his sentence, set it aside or correct

it because his counsel was ineffective during his plea negotiations, and his

sentence is unconstitutional.  Mr. Vasiloff offers twelve grounds for relief:

1.  Ineffective assistance of counsel in negotiating an appeal waiver without securing a true/actual benefit.

2.  Compulsion, by ineffective counsel, with knowing complicity of other parties, to waive all my constitutional rights (based on an unrealistic unspoken promise).

3.  Ineffective counsel never requested proof of the USPO-asserted "production dates" used to "group" the offense resulting in an incorrect sentencing enhancement and (inappropriately compelled me to waive this issue).

4.  Ineffective counsel never requested proof of "multiple photo shoot dates"– and compelled me to waiver this argument– resulting in an inappropriate five-level enhancement for pattern of conduct.

5.  The "providing alcohol to a minor making them vulnerable" enhancement [3A1.1(b)(1)] argument only succeeded because of IAC who then improperly compelled me to waive the argument.

6.  It is multiplicitous [sic] – causing this Court to lose jurisdiction – when more than one "production" count is charged for a single "photo-shoot".  (Also IAC not to argue/appeal this fact).

7.  Constitutional and legal errors render this conviction invalid.

8.  Constitutional and legal errors render this sentence invalid.

9.  Cumulative error causes the conviction and/or sentence to be invalid.

10.  My Constitutional right to "due process" and freedom from "cruel and unusual punishment" was violated by my lengthy sentence.

11. Offense level 43 (or 44) should NOT be "mandatory Life" but instead be a "range" (as are levels 1-42 at Criminal History I).

12. "Appeal waiver" (if not plea agreement itself) should be invalidated due to contract principles of "Lack of consideration" or "Mutual Mistake."

(Doc. 1; Crim. Doc. 38).

The Government filed a motion to dismiss, citing the waiver provision in Mr. Vasiloff's plea agreement. (Doc. 6). Mr. Vasiloff filed a response to the Government's motion to dismiss. (Doc. 12, 15). The magistrate judge recommended that the Court deny the Government's motion to dismiss because Mr. Vasiloff's claims concern the validity of the appeal waiver and his plea.[5] (Doc. 19). The Court adopted the recommendation and denied the Government's motion to dismiss. (Doc. 22).

The Government filed a response to Mr. Vasiloff's § 2255 motion. (Doc. 25). The Court issued a *McBride* order notifying the parties that the case was ripe for summary disposition. (Doc. 27). Mr. Vasiloff filed a reply brief and supplemental argument. (Docs. 34-36). He also filed motions for an evidentiary hearing and for court-appointed counsel. (Docs. 30, 32). On this record, the undersigned considers Mr. Vasiloff's motion for relief from the 3,900 month

---

[5] This case was reassigned to the undersigned magistrate judge following the retirement of Chief Magistrate Judge Paul W. Greene.

sentence that he currently is serving.

**DISCUSSION**

Pursuant to 28 U.S.C. § 2255, if the Court finds that the sentence imposed on Mr. Vasiloff "was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack," then the Court must "vacate and set the judgment aside" and "discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b). Mr. Vasiloff advances several arguments in support of his motion to vacate, set aside, or correct his sentence. In grounds one, two and twelve, Mr. Vasiloff contends that his counsel was ineffective during the plea negotiations. Because his counsel was ineffective, Mr. Vasiloff asserts that his appeal waiver is invalid. In the remaining grounds, Mr. Vasiloff contends that the enhancements discussed in his presentence investigation report are improper and that his sentence is unconstitutional. The record contradicts Mr. Vasiloff's assertion that he received ineffective assistance of counsel, and it supports his sentence. Consequently, Mr. Vasiloff is not entitled to habeas relief.

## I.   MR. VASILOFF HAS NOT CARRIED HIS BURDEN WITH RESPECT TO HIS INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM.

Mr. Vasiloff contends that his trial counsel was ineffective during the plea negotiation.  A petitioner may raise ineffective assistance of counsel claims with respect to plea negotiations despite a valid appeal waiver.  *Vasiloff v. United States*, 2012 WL 5379334, *1 (N.D. Ala. 2012) (citing *Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005)).

To succeed on a claim of ineffective assistance of counsel, the petitioner must establish: (1) deficient performance—that his "counsel's representation fell below an objective standard of reasonableness;" and (2) prejudice—but for the deficiency in representation, "a reasonable probability exists that the result of the proceeding would have been different."  *See Strickland v. Washington,* 466 U.S. 668, 688-696 (1984); *see also Chandler v. United States,* 218 F.3d 1305, 1312-1313 (11th Cir. 2000).  The burden of proving ineffective assistance remains with the movant at all times.  *Chandler,* 218 F.3d at 1315 n. 15.

The performance prong of *Strickland* "requires a petitioner to establish that counsel performed outside the wide range of reasonable professional assistance and made errors so serious that he failed to function as the kind of counsel

guaranteed by the Sixth Amendment." *Butcher v. United States,* 368 F.3d 1290, 1293 (11th Cir. 2004). The proper measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland,* 466 U.S. at 688. Because a wide range of performance is constitutionally acceptable, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994). Courts "are not interested in grading lawyers' performances" but "are interested in whether the adversarial process at trial ... worked adequately." *Id.* at 386. To be unreasonable, the performance must be such that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson,* 257 F.3d 1194, 1216 (11th Cir. 2001). "[E]ven if many reasonable lawyers would not have done as defense counsel did," a court cannot grant relief on ineffectiveness grounds unless the petitioner shows "that no reasonable lawyer, in the circumstances, would have" taken similar action. *Rogers,* 13 F.3d at 386.

The prejudice prong of *Strickland* "requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense." *Butcher,* 368 F.3d at 1293. In the guilty-plea context, a petitioner must establish "a reasonable probability that, but for counsel's errors, he would not have pleaded

guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985). Similarly, in the sentencing context, a petitioner must establish a reasonable probability that, but for counsel's deficient performance, the result of the sentencing proceeding would have been different. *Glover v. United States,* 531 U.S. 198, 203-04 (2001). Informed by this precedent, the undersigned recommends that this Court find that Mr. Vasiloff's ineffective assistance of counsel claim fails because he has established neither deficient performance by his trial counsel nor prejudice created by the alleged deficiency.

## A.   Mr. Vasiloff Has Not Demonstrated that his Attorney was Ineffective.

Mr. Vasiloff argues that Mr. Tuten was ineffective in negotiating the plea agreement, so that the appeal waiver in the agreement is invalid or unenforceable. Specifically, Mr. Vasiloff contends that Mr. Tuten was ineffective because Mr. Vasiloff gave up his right to appeal, but he received nothing in return. Mr. Vasiloff reasons "that a defendant can NEVER knowingly and intelligently waive their appeal rights concerning an unknown, unimposed [sic] sentence." [6]   (Doc. 5, p. 8). Mr. Vasiloff believes that Mr. Tuten knew when he negotiated the

---

[6] Mr. Vasiloff cites *United States v. Raynor*, 989 F. Supp. 43 (D. D.C. 1997), for the proposition that "a defendant cannot knowingly, intelligently and voluntarily give up the right to appeal a sentence that has not yet been imposed and about which the defendant has no knowledge as to what will occur at the time of sentencing." *Id.* at 49.

plea agreement that Mr. Vasiloff was facing a mandatory life sentence.  (Doc. 5, p. 9).

Further, Mr. Vasiloff alleges that Mr. Tuten fraudulently induced him to enter the plea agreement by telling him how to answer the questions at the plea colloquy and informed him that he would receive a "'reasonable sentence' if I just 'went along with the procedure.'" (Doc. 5, p. 11).  Mr. Vasiloff asserts that he was "'induced' to sign the plea agreement based on an understanding that my sentence was anticipated to be less than 'LIFE.'"  (*Id*. at 13).  Mr. Vasiloff argues that "I was led to believe that I would receive something more (by signing the plea agreement) than if I had plead without an agreement and absent any true benefit, I was fraudulently induced to enter into the deal - - regardless of what was said at the 'change of plea' hearing."  (*Id*.)

Contrary to the assertions in his habeas petition, Mr. Vasiloff expressly acknowledged in his plea agreement that he did not receive promises that pressured him to plead guilty. (Crim. Doc. 15, p. 8).  The plea agreement states:

"**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO**

**PLEAD GUILTY.**"  (*Id.*) (emphasis in original).

Statements that Mr. Vasiloff made under oath and subject to the penalty of perjury at his plea hearing similarly contradict his current contention that he was induced to enter the plea agreement.  Statements made during the plea colloquy are presumed to be true.  *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994) ("There is a strong presumption that the statements made during the [plea] colloquoy are true.").  Consequently, Mr. Vasiloff bears a heavy burden to show that his statements under oath were false.  *United States v. King*, 450 Fed. Appx. 794, 800 (11th Cir. 2011); *United States v. Rogers*, 848 F. 2d 166, 168 (11th Cir. 1988).  In this case, Mr. Vasiloff confirmed to the Court that his decision to enter the plea agreement was informed and voluntary, and he specifically acknowledged the effect of the appeal waiver.

|                    |                                                                                                                                                              |
|--------------------|--------------------------------------------------------------------------------------------------------------------------------------------------------------|
| THE COURT:         | Mr. Vasiloff, does the written plea agreement that is on the table in front of you contain everything that you are relying on at this time by way of a plea bargain or plea agreement? |
| THE DEFENDANT:     | Yes, ma'am.                                                                                                                                                   |
| THE COURT:         | Before you signed the agreement, did you have a sufficient opportunity to review it with your attorney, Mr. Tuten?                                             |
| THE DEFENDANT:     | Yes, ma'am.                                                                                                                                                   |

THE COURT:        Did you have any questions of Mr. Tuten regarding the meaning of the agreement or how it might operate that he did not answer to your satisfaction?

THE DEFENDANT:    No, ma'am, he answered all of my questions.

THE COURT:        Mr. Vasiloff, the plea agreement that you have entered contains language waiving some or all of your rights to plea agreement the sentence to be imposed.   Under certain circumstances, the defendant can waive his or her right to appeal, and that type of waiver may be enforceable. However, if you believe that the waiver that is in your plea agreement is not enforceable, you can appeal the sentence and present that theory to the appellate court. When you signed the plea agreement, did you understand that you were giving up some or all of your rights to appeal?

THE DEFENDANT:    Yes, ma'am.

(Crim. Doc. 27, 9:5-10:4).  Mr. Vasiloff's sworn statements that he read the plea

documents, he had enough time to discuss the case with his counsel, and he was

satisfied with the way his trial counsel handled his case undermine his allegation

of deficient performance.  *King*, 450 Fed. Appx. at 800-01 (affirming district

court's decision to deny motion to withdraw guilty plea where district court did

not abuse its discretion in finding that sworn statements that defendant made at

plea hearing were true, and where statements from plea hearing contradicted the

arguments that defendant made on appeal).

Mr. Vasiloff  specifically complains that Mr. Tuten did not provide accurate advice about the length of his sentence.  This argument does not support a claim of deficient performance.  "[T]rial counsel's failure to accurately predict the sentence which the trial court will impose is not deficient performance.  As the Eleventh Circuit has reiterated, effective assistance of counsel does not mean errorless assistance."  *Martin v. McDonough*, 2006 WL 2245406, *7 (M.D. Fla. Aug. 4, 2006) (citing *Green v. Zant*, 738 F.2d 1529, 1536 (11th Cir. 1984)); *Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981).

As a practical matter, at the plea stage, Mr. Tuten could do nothing more than predict the length of Mr. Vasiloff's potential sentence.  Mr. Vasiloff's change of plea hearing took place on October 18, 2007; he entered his plea agreement the same day.  (Crim. Doc. 15; Crim. Doc. October 18, 2007 minute entry).  Mr. Vasiloff's sentencing hearing took place three months later on January 16, 2008. (Crim. Doc. 28).  The United States Probation Office issued its presentence report reflecting the advisory guideline imprisonment term of life after the change of plea hearing.  (Crim. Doc. 28, pp. 3-4)  In advising Mr. Vasiloff about the risks and benefits of the plea waiver in Mr. Vasiloff's plea agreement, Mr. Tuten could only

offer Mr. Vasiloff an educated guess about the sentence that the Court would impose.

Mr. Vasiloff knew this much before the Court accepted his guilty plea: the maximum sentence for *each* of the twenty-one counts relating to the photographs that Mr. Vasiloff produced was 30 years.  (Crim. Doc. 27, p. 11).  Mr. Vasiloff testified that he understood the applicable maximum penalty, and he understood that the sentencing guidelines were advisory and that the Court could depart from them.  (Crom. Doc. 27, p. 13).  With this information at his disposal, the Court asked Mr. Vasiloff if he still wished to change his plea to guilty.  He replied, "Yes, your honor."  (Crim. Doc. 27, p. 26).  Mr. Vasiloff then pled guilty separately to each of the 22 counts that his plea agreement covers.  (Crim. Doc. 27, pp. 26-29).  Mr. Tuten could not have offered Mr. Vasiloff more specific information about his potential sentence before Mr. Vasiloff changed his plea to guilty.  Mr. Vasiloff has not established that Mr. Tuten's advice was deficient.

**B.    Mr. Vaslioff Has Not Demonstrated That He Has Been Prejudiced by His Attorney's Alleged Deficient Performance.**

Even if Mr. Vasiloff could establish that Mr. Tuten did not adequately explain the length of Mr. Vasiloff's potential sentence, Mr. Vasiloff cannot prevail on his petition because he cannot prove that he was prejudiced, given that

information concerning the length of his potential sentence was available to him from a variety of sources.  The plea documents and the Court's instruction at the plea hearing disclosed to Mr. Vasiloff that the Court might impose the maximum penalty and that his sentence might be lengthy.

For example, the plea agreement states that the statutory punishment that the Court may impose for production of child pornography is "Imprisonment for not less than 15 years nor more than 30 years."  (Crim. Doc. 15, p. 2).  The Court explained that it had authority to deviate from the Sentencing Guidelines and impose a sentence that was more severe than the sentence recommended in the guidelines.  (Crim. Doc. 27, p. 9:4-18).   The Court also thoroughly described the penalties associated with the offenses for which Mr. Vasiloff was charged.  (*Id*. at 11).  In doing so, the Court explicitly stated that the available penalties for "Counts 1 through 21" applied to *each* count:

> Do you understand that the maximum penalties as to Counts 1 through 21: A fine of not more than $250,000.  And this applies to each count, so there's 21 counts.  So that's 21 times $250,000.  Custody of not less than 15 years and not more than 30 years; again that is each count.

(Crim. Doc. 27, p. 11).  The Court also noted that as to Count 22, "the custodial term is not more than ten years."  (Crim. Doc. 27, p. 12).  Mr. Vasiloff stated that he understood the maximum penalties.  (*Id*. at 13:2-4).

26

Because he cannot demonstrate that he suffered prejudice as a result of his trial counsel's alleged ineffective explanation of the potential length of his sentence, Mr. Vasiloff's ineffective assistance of counsel argument fails.

## II.   MR. VASILOFF'S CHALLENGES TO HIS SENTENCE ARE WITHOUT MERIT.

The waiver provision in Mr. Vasiloff's plea agreement precludes Mr. Vasiloff's collateral attack on his sentence.  So does his failure to object at the sentencing hearing to the enhancements that the Court.  Absent waiver, Mr. Vasiloff's argument regarding the calculation of his sentence fails on the merits. That argument has three components.  First, he contends that the Court improperly enhanced his sentence by grouping various pornographic photographs together because there is no evidence that he took the photos over the span of a few days. Second, he asserts that the Court should not have applied the "pattern of activity" enhancement and that the Court's use of both the grouping and the pattern enhancements constitutes double counting.  Finally, he avers that the Court should not have added the vulnerable victim enhancement to his offense level because the victim was not unusually vulnerable.  (Docs. 1, 34).  These arguments are not persuasive.  Neither is Mr. Vasiloff's contention that his 3,900 month sentence is unconstitutional.

**A.      Mr. Vasiloff Waived his Ability to Attack his Sentence.**

The waiver provision in Mr. Vasiloff's plea agreement defeats his attempt to

challenge his sentence.  The pertinent language in the waiver provision states:

> **I, GARY STEVEN VASILOFF, hereby waive . . .  the right to challenge any sentence so imposed or the manner in which the sentence was determined in any collateral attack, including, but not limited to, a motion brought under 28 U.S.C. § 2255, subject to the following limitations:**
>
> **The defendant reserves the right to contest in an appeal or post-conviction proceeding:**
>
> **(a)      Any sentence imposed in excess of the applicable  statutory maximum sentence(s) . . .**
>
> **I, GARY STEVEN VASILOFF, hereby place my signature  on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

(Crim. Doc. 15, pp. 5-6) (emphasis in original)(signature on original).

Although he argues that his sentence is too long because of the

enhancements that the Court applied and because of the way in which the Court

stacked the sentences for the twenty-one counts to which he pled guilty, Mr.

Vasiloff does not contend that the 15 year sentence for each of the twenty-one

production counts exceeds the applicable statutory maximum sentence.  Similarly,

he does not suggest that the sentence that the Court imposed for the possession

count exceeds the statutory maximum.  Therefore, Mr. Vasiloff's challenges to the length of his sentence do not fall within the scope of the narrow exception to the waiver provision to which he agreed.  That provision bars his § 2255 attack on his sentence.

Indeed, the Court previously advised Mr. Vasiloff that if his plea agreement was valid, then he waived his collateral attack on his sentence.  In recommending that the Court deny the Government's motion to dismiss the § 2255 motion, the presiding magistrate judge stated that the waiver provision governed Mr. Vasiloff's "right to challenge in any collateral attack the sentence imposed, the manner in which the sentence was imposed, and any fines or special assessments . . . Any sentencing issues may ultimately be precluded based upon the waiver . . ." (Doc. 19, p. 3).  The District Court adopted the magistrate judge's recommendation.  (Doc. 22).

Even without the waiver provision, Mr. Vasiloff waived his ability to challenge the enhancements that the Court used in the calculation of the sentence because he did not object to the enhancements at his sentencing hearing.  During the sentencing hearing, Mr. Vasiloff's attorney objected to the stacking of the sentences for Counts 1 through 21, but he did not object to the grouping or pattern

of activity enhancements that the Court, based on the presentence report, used in its calculation of Mr. Vasiloff's sentence.  Mr. Vasiloff did not raise these arguments in his direct appeal to the Eleventh Circuit Court of Appeals.  (Case No. 08-10412-EE).  Consequently. Mr. Vasiloff's arguments regarding the sentencing enhancements are barred procedurally.  *See Rogozinski v. United States*, 2013 WL 1668202 (11th Cir. April 17, 2013).[7]

## A.     The Sentence Enhancements are Proper.

## 1.     Grouping, Pattern of Activity, and Double Counting.

In sentencing Mr. Vasiloff, the Court accepted the recommendation in the presentence report for a four point enhancement for grouping and a five point enhancement for "pattern of activity."  With respect to grouping, Mr. Vasiloff contends that the Court should have grouped all 21 of the production counts against him together because the Government did not prove by a preponderance of the evidence "that there was more than a single production day."  (Doc. 5, p. 19;

---

[7] Mr. Vasiloff asserts that his counsel was ineffective at the sentencing hearing and on direct appeal for failing to raise the enhancement issues. (Doc. 5, p. 18).  Even if Mr. Tuten challenged the enhancements, the Court "cannot conclude that there is a reasonable probability that the result of the sentencing would have been different." *Wilson v. United States*, 962 F. 2d 996, 998 (11th Cir. 1992) (quoting *United States v. Lawson*, 947 F. 2d 849, 853 (7th Cir. 1991)). Because he cannot demonstrate prejudice, Mr. Vasiloff cannot prevail on an ineffective assistance of counsel argument concerning the enhancements that the Court used in his sentence calculation.

*see also* Doc. 34, pp. 12-14).  He states: "[t]he government has never presented (or even had) ANY evidence of the 'multiple production dates' which were used to enhance his sentence from a severe one of 15-20 years to a completely outrageous term of three hundred twenty five (325) years."  (Doc. 35, p. 1).

Contrary to this argument, in his plea agreement, Mr. Vasiloff stipulated that he took the images at issue "between the dates of June 23, 2006, and August 14, 2006."  (Crim. Doc. 15, p. 4).[8]  To prepare the presentence report, the Probation Office reviewed the images.  It found that Mr. Vasiloff took nine of the images at issue on June 23, 2006; three of the images on July 1, 2006; one image on July 3, 2006; one image on July 9, 2006; and seven images on August 14, 2006. (Doc. 25, pp. 7-8) (citing Presentence Investigation Report, p. 6).[9]

United States Sentencing Guidelines Section 3D1.2(b) states:

All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the

---

[8] Similarly, at the plea hearing the Government stated that if the case had gone to trial, the evidence would have demonstrated that the images were taken "between the dates of June 23, 2006 and August 14, 2006."  (Crim. Doc. 27, p. 25).  Mr. Vasiloff acknowledged that the facts that the Government outlined were substantially correct, and he affirmed that he did the things that the Government described in its outline of the evidence that it was prepared to present at trial.  (Crim. Doc. 27, pp. 25-26).

[9] Mr. Vasiloff did not object to the presentence report.  "It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes." *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006).  Mr. Vasiloff did not object to the allegations of fact in the PSI or at the sentencing hearing.  The Court deems those facts admitted.

> meaning of this rule . . . [w]hen counts involve the same victim and two or
> more acts or transactions connected by a common criminal objective or
> constituting part of a common scheme or plan.

U.S.S.G. §3D1.2(b).  Application note 4 provides that a district court should not

group counts that cannot be considered "one composite harm."  U.S.S.G. §3D1.2

n.4.  The application note gives this example: "(5) The defendant is convicted of

two counts of rape for raping the same person on different days.  The counts <u>are</u>

<u>not</u> to be grouped together."  *Id.* (emphasis in original).  Following these

guidelines, the Court did not err when it did not group all 21 production counts

together but instead grouped only the counts that related to images taken on the

same date.

　　　With respect to "pattern of activity," Mr. Vasiloff argues that if "there is

indeed only a single provable 'shooting day' then there are no grounds for the §

4B1.5(b)(1) 'pattern of conduct' enhancement because there was but one

'occasion,' not 'two or more separate instances.'"  (Doc. 5, p. 21).  This argument

fails because the record establishes that there was more than one "shooting day."

Moreover, the commentary to guideline § 2G2.2 defines a pattern of activity as

"any combination of two or more separate instances of the sexual abuse or sexual

exploitation of a minor by the defendant, whether or not the abuse or exploitation

(A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. 2G2.2 cmt n. 1; *Carter*, 292 Fed. Appx. at 19. Mr. Vasiloff had more than twenty photographs depicting his stepdaughter in sexually explicit ways. Mr. Vasiloff took the photos on different days. The record establishes that Mr. Vasiloff, "engaged in 'two or more separate instances' comprising a pattern of activity." *Carter*, 292 Fed. Appx. at 19.

Finally, Mr. Vasiloff submits that the Court's use of both the §3D1.2(b) grouping enhancement and the § 2G2.2 pattern of activity enhancement led to impermissible "double counting." (Doc. 5, pp. 21-22). The Eleventh Circuit Court of Appeals addressed the issue of double counting relative to Chapter 2 and Chapter 4 enhancements in *United States v. Carter*, stating:

> "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Matos-Rodriguez*, 188 F. 3d 1300, 1309 (11th Cir. 1999)). Double counting is permitted, however, "if the Sentencing Commission intended that result and each guideline section in question concerns conceptually separate notions relating to sentencing." *United States v. Stevenson*, 68 F.3d 1292, 1294 (11th Cir.1995).

*Carter*, 292 Fed. Appx. at 19. Significantly, the Court of Appeals reiterated, "'[t]his court presumes the Sentencing Commission intended to apply separate

guideline sections cumulatively, *unless* specifically directed otherwise.'" *Carter*, 292 Fed. Appx. at 19 (quoting *Matos-Rodriguez*, 188 F. 3d at 1310) (emphasis supplied).

Mr. Vasiloff has not rebutted the presumption that the Sentencing Commission intended to apply the §3D1.2(b) grouping enhancement and the § 2G2.2 pattern of activity enhancement cumulatively.  Ultimately, he argues simply that it was error for the Court to apply both enhancements absent proof to support each one.  (Doc. 34, p. 14).  As the undersigned has explained, the record supports the enhancements.  Therefore, the undersigned recommends that, if the Court reaches the merits of Mr. Vasiloff's challenges to the calculation of his sentence, the Court reject Mr. Vasiloff's arguments regarding the grouping and pattern of activity enhancements.

## 2. Vulnerable Victim.

Pursuant to §3A1.1(b)(1), the Court increased Mr. Vasiloff's offense level by two points based on the vulnerable victim enhancement.  (Doc. 19).  "For purposes of subsection (b) 'vulnerable victim' is person (A) who is a victim of the offense of conviction ...; and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal

34

conduct." U.S.S.G. §3A1.1 cmt. n. 2. "The applicability of the 'vulnerable victim' enhancement must be determined on a case-by-case basis, and is appropriate where the defendant knows that the victim has 'unique characteristics' that make the victim more vulnerable to the crime than other potential victims of the crime." *United States v. Phillips*, 287 F.3d 1053, 1056-57 (11th Cir. 2002).

Mr. Vasiloff argues emphatically that the victim in this case, "was NOT UNUSUALLY vulnerable." (Doc. 34, p. 16). The undersigned disagrees. The victim in this case is Mr. Vasiloff's stepdaughter. She was 14 years old when he took the images at issue. Mr. Vasiloff created the images while his wife – his stepdaughter's mother – was hospitalized, and he was caring for the victim and for her brother. Mr. Vasiloff's relationship with the victim and the nature of the crime warrant the vulnerable victim enhancement.[10]

## B.   Mr. Vasiloff's Sentence is not Unconstitutional.

Mr. Vasiloff presents three arguments in support of his contention that his 3,900 month sentence is unconstitutional. First, in what appears to constitute a

---

[10] Mr. Vasiloff argues at length that the Court should not have applied this sentence enhancement as a matter of law because it does not concern the provision of alcohol or drugs to a minor, (Doc. 34, pp. 14-18), and he contends that it is "a standard practice in the film and photo business to use 'fake' beer inside a 'real' beer bottle," (Doc. 30, p. 3). The undersigned does not reach these issues because the undersigned finds that vulnerable victim enhancement rests squarely on Mr. Vasiloff's familial relationship to the victim and on her susceptibility to abuse, given the circumstances of her mother's illness.

due process challenge, Mr. Vasiloff posits that he cannot be charged with possession of child pornography because he deleted the images at issue before he was arrested.  (Doc. 34, pp. 18-20).  Second, he submits that the 3,900 month sentence constitutes cruel and unusual punishment.  (Doc. 5, pp. 29-32).  Finally, Mr. Vasiloff contends that the Guidelines Manual offense level 43 should be a sentence range, not a mandatory life sentence -- another apparent due process argument.  (Doc. 5, pp. 32-33).  The undersigned recommends that the Court reject these constitutional challenges.

## 1.    Mr. Vasiloff "Possessed" Child Pornography.

Mr. Vasiloff argues that, "[i]n a holistic sense, one does not 'possess' something that they long ago put in the trash."  (Doc. 34, p. 19).  18 U.S.C. § 2252A(a)(5)(B) defines possession of child pornography as:

> knowingly possess[ing], or knowingly access[ing] with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

According to the Eleventh Circuit Court of Appeals, possession is "'the act or

36

condition of having in or taking into one's control or holding at one's disposal.'"
*United States v. Woods*, 684 F.3d 1045, 1059 (11th Cir. 2012) (quoting *United States v. Frank*, 599 F.3d 1221, 1234 (11th Cir. 2010)). When a defendant deletes images of child pornography, he continues to "exercise control over the images." *United States v. Shiver*, 305 Fed. Appx. 640, 643 (11th Cir. 2008) (citing *United States v. Romm,* 455 F.3d 990, 1000 (9th Cir. 2006)).

Like Mr. Vasiloff, Mr. Shiver argued that he did not possess child pronography because he deleted the offending images from his computer. The Eleventh Circuit was not persuaded. The appellate court opined:

> Shiver insists that since all of the images had been deleted and stored in his computer's unallocated files, and since he lacked the 'forensic software' to access or retrieve the images from that location, he consequently lacked the ability to exercise dominion or control over the images. But even assuming that Shiver was in fact unable to retrieve the images from the unallocated files, he was able to exercise control over the images by deleting them from his computer's cache.

*Shiver*, 305 Fed. Appx. at 643. The court equated control with possession and held that Mr. Shiver "possessed the images knowingly." *Id.* Mr. Vasiloff's argument is indistinguishable from Mr. Shiver's and equally unpersuasive. Thus, under this binding precedent, Mr. Vasiloff possessed photographs for

purposes of §2252A(a)(5)(b) even if he deleted them.[11]

In any event, Mr. Vasiloff's argument cannot be reconciled with the record. At his plea hearing, Mr. Vasiloff admitted that he possessed child pornography. (Crim. Doc. 27, p. 25:10).  Mr. Vasiloff possessed the pictures prior to deleting them.  In his plea agreement, he stipulated that he took "nude photographs of his stepdaughter (age 14) using a dildo and posing in other lewd and lascivious positions, and had downloaded the photos from his digital camera onto his personal computer."  (Crim. Doc. 15, p. 3).  Therefore, he exercised control over the photographs.  Mr. Vasiloff was properly sentenced for possession of child pornography.

## 2.    Mr. Vasiloff's Sentence Does Not Constitute Cruel and Unusual Punishment.

───────────────

[11] Mr. Vasiloff cites *United States v. Seiver*, 692 F.3d 774 (7th Cir. 2012), for the proposition that, "it is true that after deleting a file and emptying the trash bin containing it, a computer owner who is not technologically sophisticated no longer 'possesses' the file in a meaningful sense, and the crime of which the defendant was committed requires knowing possession.  Had the defendant deleted the incriminating files (and emptied his trash folder with those files in it), he would no longer have knowingly possessed them if . . . he could no longer access them because he lacked the software that he would have needed to be able to recover them from the hard drive's slack space."  *Id.* at 778 (citing *United States v. Moreland*, 665 F.3d 137, 152 (5th Cir. 2011)).  The language that Mr. Vasiloff cites is dicta in an opinion regarding the validity of a search warrant for a computer that contained evidence of violations of 18 U.S.C. §§ 2252 and 2252A.  Moreover, an opinion from the Seventh Circuit Court of Appeals is persuasive authority; it does not trump binding Eleventh Circuit authority.

Citing the Eight Amendment, Mr. Vasiloff argues that his sentence constitutes cruel and unusual punishment.  (Doc. 5, p. 29).  "The Eighth Amendment provides: 'Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.'  U.S. Const. Amend. VIII. 'The Eighth Amendment does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are 'grossly disproportionate' to the crime.'" *United States v. Estrella*, 2013 WL 1943433, *4 (11th Cir. May 13, 2013) (quoting *United States v. Farley*, 607 F.3d 1294, 1341 (11th Cir. 2010)).  "'Outside the context of capital punishment, *successful* challenges to the proportionality of sentences [are] exceedingly rare.'" *United States v. Raad*, 406 F.3d 1322, 1323 (11th Cir. 2005)(quoting *Solem v. Helm*, 463 U.S. 277, 289 (1983))(emphasis supplied).  Mr. Vasiloff bears the burden of showing that the sentence is grossly disproportionate to the offense committed. *United States v. Johnson*, 451 F.3d 1239, 1243 (11th Cir. 2006).

"Child sex crimes are among the most egregious and despicable of societal and criminal offenses . . .." *United States v. Sarras*, 575 F.3d 1191, 1220 (11th Cir. 2009).  As the Court noted, this child sex crime involving Mr. Vasiloff's 14 year old stepdaughter was, for all intents and purposes, incestuous, making it all

the more egregious.  The Court explained:

> The fact that Mr. Vasiloff used his position as the stepfather or surrogate father -- and by surrogate father, I mean more than stepfather. There was a close relationship where the child looked on Mr. Vasiloff as the person who had been in the role of her father makes this worst. Although any child should not go through what this child went through, but the fact that Mr. Vasiloff was [for all intents and] purposes her father makes this worst. The fact that the mother was in the hospital just gave Mr. Vasiloff more access to his stepdaughter without any fear of discovery by his wife.
>
> . . .
>
> But because of the relationship between Mr. Vasiloff and this particular child, it's not only, you know, the production of child pornography or sexual exploitation of a child, but it's sexual exploitation of a child who in everything but a biological sense was the daughter of the perpetrator, and so it's incestuous type. Well, although I guess technically incest. It's just that type of violation. And the level of -- I mean, I am not a psychologist or psychiatrist, but the level of the impact on the victim, in my experience with these cases coming before me, is exacerbated when there is an incestuous type exploitation.

(Crim. Doc. 28, pp. 16-17).

As the Court stated, Mr. Vasiloff's 325 year sentence "is basically just another way of saying life."  (Crim. Doc. 28, p. 16:7-10).  The sentence is severe, but it is not disproportionate under the circumstances, and it does not violate the Eighth Amendment.  *See United States v. Rolon*, 445 F.3d 314, 332 (11th Cir. 2011) (rejecting Eighth Amendment challenge to consecutive life sentences);

*Sarras*, 575 F.3d at 1209 (affirming sentence of "360 months on each of counts

one, two, and three [concerning persuading a minor to engage in sexually explicit

conduct]; and [a] term of 120 months on count four [possession of child

pornography]. All such terms to run consecutive."); *Carter*, 292 Fed. Appx. at 18,

20-21 (affirming consecutive 20 year (count 1 - production), 15 year (count 2 -

distribution/receipt), and 10 year (count 3 - possession of child pornography)

sentences even though defendant argued that he was in poor health); *see generally,*

*United States v. Hankerson*, 491 Fed. Appx. 166, 168 (11th Cir. 2012) (quoting

with approval *United States v. Yousef*, 327 F.3d 56, 163 (2nd Cir. 2003))

("Lengthy prison sentences, even those that exceed any conceivable life

expectancy of a convicted defendant, do not violate the Eighth Amendment's

prohibition against cruel and unusual punishment when based on a proper

application of the Sentencing Guidelines or statutorily mandated consecutive

terms.").[12]

---

[12] Mr. Vasiloff has asked the Court to take notice of Judge Posner's concurring opinion in *United States v. Craig*, 703 F.3d 1001, 1002-04 (7th Cir. 2012) (Posner, J., concurring). Judge Posner's cost-benefit analysis of lengthy sentences is interesting and worthy of discussion, but it does not cast a constitutional pall over the sentence in this case. The *per curiam* opinion in *Craig* supports the sentence in this case. Mr. Craig's total offense level for four counts of producing child pornography was 43 (just like Mr. Vasiloff's offense level), and "his guideline sentence for each count was life." Instead of giving him a life sentence, the district court sentenced Mr. Craig to 30 years on one count and to concurrent twenty year sentences on the other three counts, with instructions that Mr. Craig was to serve the concurrent 20 year sentences

3.      **Mandatory Life of PSI Offense Levels Greater than 43**.

Mr. Vasiloff argues that there should be a sentence range for offenses above 43.  (Doc. 5, p. 32).  28 U.S.C. § 994(a) authorizes the United States Sentencing Commission to promulgate guidelines and policy statements.  The Commission's statutory mission is to "foresee guidelines that will further the basic purpose of criminal punishment...it delegates to the Commission broad authority to review and rationalize the federal sentencing process."  U.S.S.G. §1A1.1, ¶ 2.  The Commission is responsible for adopting sentencing ranges.

Mr. Vasiloff cites *United States v. Heath*, 840 F. Supp. 129, 131 (S.D. Fla. 1993), for the proposition that an offense level above 43 should have a sentence range.  *Heath* is not a child pornography case; it is a drug case involving a young defendant.  *Id*.  Although the district court judge formulated a sentence range for levels above 43, he did so because the sentence table "does not consider the impact caused to a young defendant."  *Id*.  Mr. Vasiloff committed his crime as an older offender, and the crime was more egregious in nature than Mr. Heath's crack cocaine offense at the age of 22.  The undersigned does not recommend that the Court follow *Heath*, an opinion that is not binding in this Court.  There is no flaw,

---

consecutive to the 30 year sentence.  The Seventh Circuit panel held that, "[t]he judge was entitled to do this," and the panel dismissed the appeal.  *Id.* at 1002.

constitutional or otherwise, in the Court's use of existing sentencing guidelines.[13]

## C.  Cumulative Error Theory.

The undersigned does not find that there were multiple errors committed during Mr. Vasiloff's criminal proceedings.  Mr. Vasiloff contends that he has been denied the constitutional right to a fair trial; however, he waived his right to a trial when he accepted a plea agreement.

## III.  MR. VASILOFF IS NOT ENTITLED TO AN EVIDENTIARY HEARING.

Mr. Vasiloff has asked for an evidentiary hearing so that he may present "evidence from outside the record" in support of his § 2255 motion.  (Doc. 30, p.1).  "'[I]f the petitioner 'alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim.'" *United States v. Scott*, 325 Fed. Appx. 822, 824 (11th Cir, 2009) (quoting *United States v. Aron*, 291 F.3d 708, 715(11th Cir. 2002)).  "'[A] district court is not required to hold an evidentiary hearing where the petitioner's

---

[13] Mr. Vasiloff also complains in general about sentencing procedures.  He contends that it is wrong for a court to have to advise a defendant only of the maximum potential penalty for the crimes with which he is charged and not to have to tell the defendant that the sentences for separate counts may run consecutively.  (Doc. 15, pp. 21-23).  Here, the Court explicitly told Mr. Vasiloff at his plea hearing that the maximum penalty that the Court described applied to each count, and the Court made clear that Mr. Vasiloff's guilty plea pertained to 21 production counts and one possession count.  (Doc. 27, p. 11).  Mr. Vasiloff has not demonstrated that his sentence is unconstitutional on this record.

allegations are affirmatively contradicted by the record, or the claims are patently frivolous.'" *Id.* The evidence which Mr. Vasiloff proposes to introduce at an evidentiary hearing either supports arguments that are patently frivolous or concerns allegations that the record affirmatively contradicts.

Mr. Vasiloff first wishes to offer evidence to contest Mr. Tuten's assertion in his affidavit that Mr. Vasiloff benefitted from his guilty plea because the Government agreed to forego additional investigation of Mr. Vasiloff's conduct in exchange for the plea, and the investigation may have produced evidence that would support additional charges against Mr. Vasiloff. (Doc. 25-1, p. 1; Doc. 30, pp. 2-3). In his affidavit, Mr. Tuten stated that Mr. Vasiloff, "informed me of information that caused us to believe that other related charges would be filed against him if this information ever came to light through his admission or through a more thorough investigation. I shall not divulge that information as it is covered by the attorney client privilege. Mr. Vasiloff did not want a trial as trial preparation could result in the Government discovering the additional information about the case. Further, Mr. Vasiloff could not testify at a trial without the probability of his testimony revealing to the Government information that could and probably would lead to more charges." (Doc. 25-1, p. 1). Mr. Vasiloff argues

that, "[c]ontrary to Mr. Tuten [sic] claims, Mr. Vasiloff did NOT admit to any

additional significant crimes, and even if he had, they wouldn't have subjected

him to more time in prison than he will end up serving on his current 3,900 month

'bargain' that Mr. Tuten claims to have arranged."  (Doc. 30, p. 2).

The record contradicts Mr. Vasiloff's assertion.  The affidavit that an FBI

Special Agent provided in support of the federal criminal complaint against Mr.

Vasiloff contains descriptions of conduct that exceeds the scope of the conduct

addressed in Mr. Vasiloff's federal indictment, lending credence to Mr. Tuten's

assertion that Mr. Vasiloff gained a benefit by obtaining "reasonable assurances

from the Government that the investigation was closed and that there were no

other possible charges that would be filed in the Northern District of Alabama."

(Doc. 25-1, p. 1; Crim. Doc. 1, p. 2).  Specifically, the agent stated in his affidavit

that the Alabama Department of Human Resources Assessment of Children at

Risk officials reported to the Cherokee County Sheriff's Office that, "Gary Steven

Vasiloff had sexually abused his stepdaughter (age 14) by performing oral sex on

her, watching 'sex movies' with her, persuading her to rub his penis, and teaching

her to use a dildo."  (Crim. Doc. 1, p. 2).  This conduct could have served as the

basis for additional charges against Mr. Vasiloff.  Perhaps there is other conduct of

which Mr. Tuten is aware.  On this record, the undersigned does not find that an

evidentiary hearing is warranted.[14]

In support of his argument that the Court should not have applied a

vulnerable victim enhancement in calculating his sentence, Mr. Vasiloff seeks to

introduce evidence that it is "standard practice in the film and photo business to

use 'fake' beer inside a 'real' beer bottle."  (Doc. 30, p. 3).  He offers the

declaration of Robert Tashbook who posits that, "it is the nearly universal practice

to use 'fake' (non-alcoholic) liquid instead of real (or simulated) beer bottles when

filming or photographing a scene involving the depiction of a performer 'drinking'

from a bottle."  (Doc. 30, p. 11).  This statement and Mr. Tashbook's "professional

judgment," based on his review of the Government's description of the images at

issue, that Mr. Vasiloff's stepdaughter was neither drunk nor medicated when Mr.

Vasiloff photographed her is probative of nothing, is patently frivolous, and does

not entitle Mr. Vasiloff to relief.  *See* pp. 34-35, *supra*.

Therefore, the undersigned recommends that the Court deny Mr. Vasiloff's

---

[14] Mr. Vasiloff asks the Court to sanction Mr. Tuten for "false statements that he made in his affidavit."  (Doc. 31, p. 1).  Mr. Vasiloff offered his declaration and his sister's declaration in support of his request for a sanction.  (*Id*. at p. 3-8).  Mr. Vasiloff's sister, Ms. Medley, states, for example, that she is "unaware of any actions (of commission or omission) by the defendant that WOULD have opened him up to criminal liability, contrary to the sworn claims of Mr. Tuten in his affidavit."  (Doc. 31, p. 8).  For the reasons stated above, Mr. Vasiloff's criticisms of Mr. Tuten's affidavit are unpersuasive.  There is no basis for a sanction.

motion for an evidentiary hearing.

**CONCLUSION**

The undersigned magistrate judge RECOMMENDS that the Court DENY

Mr. Vasiloff's motion to vacate, set aside or correct sentence.

Notice of Right to Object

Any party who objects to this report and recommendation must, within

fourteen (14) days of the date on which it is entered, file specific written

objections with the clerk of this court.  Any objections to the failure of the

magistrate judge to address any contention raised in the petition also must be

included.  Failure to do so will bar any later challenge or review of the factual

findings or legal conclusions of the magistrate judge.  See 28 U.S.C. §

636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985),

*reh'g denied*, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); *Nettles v.*

*Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  In order to challenge the

findings of the magistrate judge, a party must file with the clerk of the court

written objections which shall specifically identify the portions of the proposed

findings and recommendation to which objection is made and the specific basis for

objection.  A copy of the objections must be served upon all other parties to the

47

action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Objections not meeting the specificity requirement set out above will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

Done, this the 14th day of August, 2013.

_Madeline H. Haikala_

_____

MADELINE HUGHES HAIKALA
U.S. MAGISTRATE JUDGE